IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Vessel Medical, Inc. and Premier Medical Inc., ) | Civil Action No.: 6:15-cv-00330-MGL |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Craig Elliott and Mako Medical ) | **OPINION AND ORDER** |
| Laboratories, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before this Court are Plaintiffs Vessel Medical, Inc. and Premier Medical Inc.'s ("Vessel" and "Premier," collectively "Plaintiffs") Renewed Motion for Preliminary Injunction brought pursuant to Federal Rule of Civil Procedure 65 (ECF No. 55) and Defendant Mako Medical Laboratories, LLC ("Mako")'s Motion to Dismiss for Lack of Jurisdiction brought pursuant to Rules 12 (b)(2), 12 (b)(3) and 12 (b)(6) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction, improper venue, and failure to state claim upon which relief can be granted. (ECF No. 60.) This Court will address Plaintiff's Motion for Preliminary Injunction in a separate order.

Here, Plaintiffs ask this Court to dismiss this case with prejudice for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Alternatively, Defendant Mako moves pursuant to 28 U.S.C. § 1406, to transfer this lawsuit to the United States District Court for the Eastern District of North Carolina, on the grounds that the District of South Carolina is not an appropriate venue. For the reasons set forth herein, this Court denies Defendant Mako's motion to dismiss or transfer the case.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs filed an Amended Complaint against Mako and Craig Elliott on May 28, 2015 (ECF No. 54), asserting claims for preliminary injunction, violation of the South Carolina Trade Secrets Act, breach of contract, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), breach of duty of loyalty, unjust enrichment, accounting, imposition of a constructive trust on illegal profits, tortious interference with contractual relations, and intentional interference with prospective contractual relations. Plaintiffs contemporaneously filed a Renewed Motion for Preliminary Injunction and Expedited Hearing. (ECF No. 55.) Defendant Mako filed its motion to dismiss or transfer the case on June 11, 2015. (ECF No. 60.) Plaintiffs filed its response in opposition to the motion to dismiss on June 29, 2015 (ECF No. 66) and Defendant Mako filed its reply on July 9, 2015. (ECF No. 69.)

According to the Amended Complaint, Plaintiff Vessel is a medical supply and equipment distributor and Plaintiff Premier, an affiliated corporation, is an esoteric laboratory offering specialized medical testing and monitoring. (ECF No. 54 at 2.) Plaintiffs, both South Carolina corporations, work in conjunction to provide integrated products and services within the healthcare industry. (ECF No. 54 at 2.) Plaintiffs allege that Defendant Craig Elliott, an individual residing in North Carolina, was hired as Director of Strategic Business Development to work on behalf of both companies. (ECF No. 54 at 3.) As a result, Defendant Elliott had access to proprietary, confidential, and trade secret information of both companies, including information related to Plaintiffs' proprietary designs, products, technologies, processes, customers, and vendors. (ECF No. 54 at 4.) Plaintiffs allege that Defendant Elliott signed a Non-Disclosure, Non-Solicitation, and Non-Compete Agreement as a condition of his initial employment between himself, and Vessel,

together with any and all affiliated or related entities. (ECF No. 54 at 4-5.) Plaintiffs allege that sometime after signing the agreement, Defendant Elliott planned to establish, sell for, or partner with a competing lab, Defendant Mako Medical Laboratories, LLC, and also solicited Plaintiffs' clients through the use of Plaintiffs' customer lists and information. (ECF No. 54 at 8-9.) Plaintiffs claim that after Defendant Elliott's resignation with Plaintiffs, at least three of Plaintiffs' clients discontinued their relationship with Plaintiffs in favor of Defendant Mako, that Plaintiffs lost employees and prospective clients, and that Plaintiffs suffered other damage to reputation, goodwill, and relationships. (ECF No. 54 at 10-13.)

The Amended Complaint asserts claims against Mako for preliminary injunctive relief, violation of the South Carolina Trade Secrets Act, violation of the South Carolina Unfair Trade Practices Act, tortious interference with contractual relations, and intentional interference with prospective contractual relations. Plaintiffs allege that Defendant Mako knew of the existence of the agreement between Defendant Elliott and Plaintiffs and intentionally caused Defendant Elliott to breach the agreement through misappropriating Plaintiffs' customers and employees and competing against Plaintiff during the restrictive period. (ECF No. 54 at 24.) Plaintiffs also allege Defendants intentionally interfered with Plaintiffs' prospective customer relationships by disparaging Plaintiffs and soliciting those customers to switch their relationships to Defendant Mako. (ECF No. 54 at 25.)

## STANDARDS OF REVIEW

1. Personal Jurisdiction

Upon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir.1997); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th

Cir.2003). Generally, when a district court decides a pre-trial motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction and the court is to construe the pleadings, affidavits and other supporting documents presented to the court in the light most favorable to plaintiff by assuming credibility and drawing all inferences and resolving all factual disputes in the plaintiff's favor. *See Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (unpublished opinion); *Mylan Labs., Inc., v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In doing so, however, the court need not "'credit conclusory allegations or draw farfetched inferences.'" *Masselli*, 2000 WL 691100, at *1 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

    A.    Minimum Contacts

In determining whether personal jurisdiction exists over a non-resident defendant, the court must perform a two-step analysis. The court must first determine whether the South Carolina (forum state) long-arm statute provides a basis for asserting jurisdiction over the defendant. *See Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir.1997). Then, the court must determine that the exercise of personal jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623–24 (4th Cir.1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). When the cause of action does not arise out of the defendant's contacts with the forum, however, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 415-416.

B.   Specific and General Jurisdiction

If a cause of action arises out of or relates to a defendant's contacts with the forum state, the court can exercise specific jurisdiction. A defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

"[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction. *Tire Engineering and Distribution, LLC v.*

*Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012).  The corporate operations within the state must be so substantial and of such an extensive nature as to justify suit against it on all causes of action dealing with matters entirely distinct from the instant litigation.  *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

        C.        Fair Play and Substantial Justice

After addressing the defendant's contacts as set forth above, the court is to then consider whether the exercise of jurisdiction "would comport with 'fair play and substantial justice.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citing *Int'l Shoe Co.*, 326 U.S. at 320).  In determining whether the exercise of jurisdiction comports with fair play and substantial justice, the court evaluates the following factors: 1) the burden on the defendant; 2) the forum State's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several States in furthering fundamental substantive social policies.  *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir.2001) (quoting *Burger King*, 471 U.S. at 477)).  "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent."  *Id.* (quotations and citations omitted).

2.        Improper Venue

Defendant Mako also moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12 (b)(3). "Unlike a Rule 12(b)(6) motion, evidence outside the pleadings may be 'freely

consider[ed]' in ruling on a Rule 12(b)(3) motion." *Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, C/A No. DKC 13–0560, 2013 WL 3895039, at *2 (D.Md. July 26, 2013) (quoting *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir.2006)). "A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir.2012) (citation omitted). In assessing whether a plaintiff has made the required showing, the Courts must view the facts in the light most favorable to plaintiff. *Id.*

In general, a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). A case filed in an incorrect venue must be dismissed, or, if in the interests of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a).

3.      Failure to State a Claim.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). In considering a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court

may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent "they plausibly give rise to an entitlement to relief."*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to specific acts, dates, or policies, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979). In sum, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

**ANALYSIS AND DISCUSSION**

This Court must first resolve the threshold issues of jurisdiction before addressing dismissal on the merits of the dispute. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir.2006). Accordingly, the Court considers Defendant Mako's Rule12(b)(2) motion first and will then address the Rule 12(b)(3) motion asserting improper venue.

I.     <u>Personal Jurisdiction Analysis</u>

Defendant Mako has moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Defendant Elliott has not made such a motion. During oral argument on a prior version of this motion, Plaintiffs admitted that this is not a case about general jurisdiction. Upon this Court's own review of the record, the Court would agree that as presented, Defendant Mako has not engaged in the sort of "substantial" or "continuous and systematic" contacts in South Carolina such as to

subject it to general jurisdiction in the state. Thus, the Court must determine whether the Defendant's contracts are sufficient to subject it to specific jurisdiction in South Carolina.

The Court has set forth the applicable specific jurisdiction standards above. This Court must determine whether Defendant Mako "purposely established minimum contacts with the forum" state. *See Burger King*, 471 U.S. at 479. Plaintiffs argue that Defendant Elliott's activities with the forum state are highly relevant to the specific jurisdiction inquiry as it pertains to Defendant Mako. Plaintiffs maintain that Defendant Elliott, while still employed as Plaintiffs' Director of Strategic Business Development, marketed for Defendant Mako and assisted with the formation of Mako as a competing business. (ECF No. 66 at 5-6.) Plaintiffs claim Defendant Elliott's intentional acts, targeted at Plaintiffs in South Carolina, caused economic and reputational injury to Plaintiffs in South Carolina. Accordingly, Plaintiffs claim that through Defendant Elliott, Defendant Mako has purposely availed itself of South Carolina, and should not be able to hide behind state lines. Defendant Mako responds by arguing that allegations that Defendant Elliott aided in the formation and management of Mako are false and maintains the Amended Complaint fails to identify any act or omission on the part of Mako that would subject it to specific jurisdiction under the South Carolina Long Arm statute. (ECF No. 60-1 at 9.)

Having considered the pleadings, affidavits and other supporting documents presented, the Court finds that Plaintiffs have proven that Defendant Mako had contacts with the forum state related to the alleged matters such that the imposition of specific jurisdiction is proper. The Amended Complaint alleges that Defendant Mako solicited Defendant Elliott and Plaintiffs' clients, knew of the existence of Defendant Elliott's contractual obligations with Plaintiffs, and intentionally caused Defendant Elliott to breach the terms of the agreement by misappropriating Plaintiffs' trade secrets,

soliciting Plaintiffs' customers and employees, and improperly competing against Plaintiffs. (ECF No. 54 at 24.) The Amended Complaint also alleges that all Defendants intentionally interfered with Plaintiffs' customer relations by soliciting accounts and customers. (ECF No. 454 at 25.) Further, the Amended Complaint charges that Defendant Elliott misappropriated Plaintiffs' trade secrets and proprietary information while employed with Plaintiffs, and for the benefit of Defendant Mako. (ECF No. 54 at 17-18.) Plaintiffs contend that Defendants Elliott and Mako retain and continue to use Plaintiffs' trade secrets and confidential information to unfairly compete with Plaintiffs and to solicit Plaintiffs' customers. (ECF No. 55-2 at 9.)

At this stage of the litigation, the Court must take these allegations as true and construe the evidence in Plaintiffs' favor. Accordingly, Defendant Elliott's activities are indeed relevant to Defendant Mako's jurisdictional inquiry. *See Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 722 (D.S.C. 2007) ("The contacts within the forum of a party's agent, partner, or joint venturer may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction."); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("[T]he parties' relationships with each other may be significant in evaluating their ties to the forum"); *Grand Entm't Group v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("[A]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction."). Here it is alleged that Defendant Elliott, as an agent or partner of Defendant Mako, deliberately directed significant activities toward the state, to include soliciting Plaintiffs' employees and accessing Plaintiffs' trade secret and confidential materials, and these acts are attributable to Defendant Mako and are sufficient contacts to sustain personal jurisdiction over Defendant Mako.

Additionally, having considered the "fair play and substantial justice" factors set forth above,

the Court finds that exercising jurisdiction over Defendant Mako is constitutionally proper. South Carolina has a strong interest in adjudicating a dispute involving a South Carolina corporation and its citizens's trade secrets. Plaintiffs also have an interest in seeking relief in their home state and where it claims injury. For the purposes of efficiency, this Court should also retain jurisdiction rather than permit multiple actions. Although it might be slightly burdensome for Defendant Mako to travel from North Carolina to South Carolina to defend this suit, such burden would surely be minimal. Accordingly, jurisdiction is not rendered unreasonable and Defendant Mako's motion to dismiss on the basis of lack of personal jurisdiction is denied.

II.     <u>Venue in the District of South Carolina</u>

Defendant Mako argues that, pursuant to 28 U.S.C. § 1391(b), venue is improper in this Court because Defendant Elliot resides in North Carolina, and Mako is a North Carolina corporation with its principal place of business in North Carolina. (ECF No. 60-1 at 12.) Additionally, Defendant Mako claims that Plaintiffs have not alleged that Mako engaged in any wrongdoing in South Carolina or that Plaintiffs suffered any injury in South Carolina. (ECF No. 60-1 at 12.) Defendant Mako asks the Court to dismiss or transfer this case to the Eastern District of North Carolina under 28 U.S.C. § 1406(a), or alternatively, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties. (ECF No. 60-1 at 13-14.)   In response, Plaintiffs argue that it is not "wrong" for a court in this District to hear an action about protecting South Carolina corporations—specifically, Plaintiffs note that the trade secrets allegedly misappropriated were property of Plaintiffs in South Carolina, and the effects of Defendants' misappropriation will injure Plaintiffs in South Carolina. Plaintiffs argue that transfer to the District Court for the Eastern District of North Carolina is not in the interests of justice because Plaintiffs are entitled to litigate

this suit in South Carolina and increased travel costs for one party's witnesses is not a sufficient reason for a forum to be inconvenient.

This Court agrees and concludes that Plaintiffs have made a prima facie showing that venue is proper in South Carolina. Plaintiffs' action concerns the alleged misappropriation of trade secrets and property of a South Carolina corporation and the alleged solicitation of a South Carolina corporation's clients and employees. Here, the Court determines that a substantial part of the events giving rise to Plaintiff's claims occurred in South Carolina. *See Gateway Gaming, LLC v. Custom Game Design, Inc.*, C.A. No. 8:06–01649–HMH, 2006 WL 2781043, at *5 (D.S.C. Sept. 25, 2006) (finding venue proper based on contract negotiations via telephone and email from the plaintiff in South Carolina to the defendant in Texas and on plaintiff's performance of its obligations in South Carolina); *Figgie Int'l, Inc. v. Destileria Serralles, Inc*., 925 F.Supp. 411, 412–13 (D.S.C.1996) (finding venue proper over Puerto Rican defendant where plaintiff's base of operations for the negotiation of the contract and for coordination of the engineering, manufacturing, and shipping of the equipment took place in South Carolina). Accordingly, the Court finds that South Carolina is a proper venue for this suit.

In the alternative, Defendant Mako asks this Court to transfer venue to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a). (ECF No. 60-1 at 13.) Pursuant to federal statute,"[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ...." 28 U.S.C. § 1404(a). "An order allowing transfer of a matter to another district is committed to the discretion of the district court." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir.1984)). A district court adjudicates such motions according to individualized, case-by-case considerations of

convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  As part of the analysis, Courts commonly consider: (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view [of the premises] by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.  *See Landers v. Dawson Constr. Plant, Ltd.*, Nos. 98–2709, 98–2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999) (unpublished decision).  Upon review of these factors, the Court finds that litigation in this forum is proper.  Plaintiffs desire to have this matter resolved in South Carolina just as much as Defendant Mako wishes to have this matter litigated in North Carolina.   Potential witnesses located in both North Carolina and South Carolina will likely have to travel in order to participate in the litigation.  *See Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir.1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away.").  Important, however, is Plaintiffs' choice of forum and the interest in having a local controversy resolved at home, and these factors weigh heavily in Plaintiffs' favor.  *See Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987).  Accordingly, this case should not be transferred to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).  This Court denies Defendant Mako's motion to dismiss pursuant to Rule 12(b)(3).

III.     Failure to State a Claim

Finally, Defendant Mako moves this Court for dismissal of the Amended Complaint against Mako under Rule 12(b)(6) for failure to state a claim.  Defendant Mako argues that the case against Mako should be dismissed because the Amended Complaint is based on South Carolina law which should not apply to Mako.  Defendant Mako also contends that the Amended Complaint fails to set

forth sufficient factual evidence to support Plaintiffs' unfair trade practices and tortious interference claims. In response, Plaintiffs reject Defendant Mako's argument concerning the application of South Carolina substantive law based on the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and this Court's ability to apply South Carolina substantive law in a diversity case premised on an alleged injury suffered in South Carolina. Plaintiffs also maintain their allegations against Mako are sufficiently stated under the applicable law and supported by the evidence.

The Court agrees with Plaintiffs' position. Accepting all well-pleaded allegations in Plaintiffs' amended complaint as true, and drawing all reasonable factual inferences from those facts in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently plead plausible claims for relief for violation of the SCUTPA, tortious interference with contractual relations, and intentional interference with prospective contractual relations against Defendant Mako in light of the elements of these causes of action. At this stage of the litigation, it is premature to decide that no relief could be granted under any set of facts that could be proven consistent with the allegations. Accordingly, the Court denies the motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the reasons set forth above, Defendant Mako Medical Laboratories, LLC's Motion to Dismiss or Transfer the Case (ECF No. 60) pursuant to Rules 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, is hereby DENIED.

IT IS SO ORDERED.

/s/Mary G. Lewis
United States District Judge

September 15, 2015
Columbia, South Carolina