IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Vessel Medical, Inc. and Premier Medical Inc., ) | Civil Action No.: 6:15-cv-00330-MGL |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Craig Elliott and Mako Medical ) | **OPINION AND ORDER** |
| Laboratories, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before this Court are Plaintiffs Vessel Medical, Inc. and Premier Medical Inc.'s ("Vessel"and "Premier," collectively "Plaintiffs") Renewed Motion for Preliminary Injunction brought pursuant to Federal Rule of Civil Procedure 65 (ECF No. 55) and Defendant Mako Medical Laboratories, LLC ("Mako")'s Motion to Dismiss for Lack of Jurisdiction brought pursuant to Rules 12 (b)(2), 12 (b)(3) and 12 (b)(6) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction, improper venue, and failure to state claim upon which relief can be granted. (ECF No. 60.) This Court will address Defendant Mako's Motion to Dismiss in a separate order.

Here, Plaintiffs ask this Court to issue a preliminary injunction enjoining Defendants Craig Elliott ("Elliott") and Mako Medical Laboratories, LLC (collectively "Defendants") from engaging in certain alleged acts in violation of the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 *et seq*., the agreement between Plaintiffs and Defendant Elliott, and the statutory and common law of South Carolina. For the reasons set forth herein, this Court grants in part and denies in part Plaintiffs' Motion for Preliminary Injunction.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs filed an Amended Complaint against Defendants on May 28, 2015 (ECF No. 54),

asserting claims for preliminary injunction, violation of the South Carolina Trade Secrets Act ("SCTSA"), breach of contract, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), breach of the duty of loyalty, unjust enrichment, accounting, imposition of a constructive trust on illegal profits, tortious interference with contractual relations, and intentional interference with prospective contractual relations. According to the Amended Complaint, Plaintiff Vessel is a medical supply and equipment distributor and Plaintiff Premier, an affiliated sister corporation, is an esoteric laboratory offering specialized medical testing and monitoring. (ECF No. 54 at 2.) Plaintiffs "work in conjunction to provide integrated products and services to customers within the healthcare industry." (ECF No. 54 at 2.) Plaintiffs allege that Defendant Elliott, was hired as Director of Strategic Business Development to work on behalf of both companies. (ECF No. 54 at 3.)  As a result, Defendant Elliott had access to proprietary, confidential, and trade secret information of both companies, related to Plaintiffs' designs, products, procedures, technologies, methodologies, and processes, customers, and vendors. (ECF No. 54 at 4.)

Plaintiffs also allege that Defendant Elliott signed a Non-Disclosure, Non-Solicitation, and Non-Compete Agreement as a condition of his initial employment between himself, and Vessel (along with other affiliated or related entities). (ECF No. 54 at 4-5.) Plaintiffs contend that after signing the agreement, Defendant Elliott planned to establish, sell for, or partner with a competing lab, Defendant Mako Medical Laboratories, LLC, and also solicited Plaintiffs' clients through the use of Plaintiffs' customer lists and information, in breach of the agreement. (ECF No. 54 at 8-9.) Plaintiffs claim that after Defendant Elliott's resignation, at least three of Plaintiffs' clients discontinued their relationship with Plaintiffs in favor of Defendant Mako, that Plaintiffs lost employees and prospective clients, and that Plaintiffs suffered other damage to reputation, goodwill,

and relationships due to the Defendants' actions. (ECF No. 54 at 10-13.)

Plaintiffs filed the instant motion on May 28, 2015. (ECF No. 55.) Defendant Mako filed a memorandum in opposition to Plaintiffs' renewed motion for preliminary injunction on June 11, 2015, arguing that Plaintiffs' motion is based on faulty premises, and that Plaintiffs seek to enjoin activity in which Defendant Mako is not engaged. (ECF No. 61 at 2-3.) Defendant Elliott filed a reply on June 15, 2015, relying on his memorandum in opposition to Plaintiffs' initial motion for preliminary injunction.[1] (ECF No. 12 & 62.) Defendant Elliott argues that Plaintiffs have failed to establish entitlement to preliminary injunction relief because the non-compete is overbroad and unreasonable, and because there is no evidence of irreparable harm. (ECF No. 62 at 1-2.)

## STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs the issuances of injunctions and restraining orders. Both the TRO and preliminary injunction are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). In order to obtain a preliminary injunction, a plaintiff must demonstrate: "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19-20 (2008); *The Real Truth About Obama, Inc. v.*

---

[1] This Court held a hearing on Plaintiffs' initial Motion for Preliminary Injunction on March 17, 2015. (ECF No. 37.) At that hearing, Plaintiffs presented additional information in support of their motion and shortly thereafter, filed the affidavit of Mr. Norman Crawford and supporting materials in support of the motion. (ECF No. 39.) Defendant Elliott filed his own affidavit and supporting materials in response to the Crawford affidavit. (ECF No. 43.) The Court has considered these materials as well as the entire record in this case.

*Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), overruling *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), vacated on other grounds, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). All four requirements must be satisfied before the Court enters preliminary injunctive relief. *The Real Truth About Obama, Inc.*, 575 F.3d at 346. As the Fourth Circuit has explained, the Supreme Court requires "that the plaintiff make a clear showing that it will likely succeed on the merits at trial." *The Real Truth About Obama, Inc.*, 575 F.3d at 346 (internal citation omitted). Further, the Supreme Court in *Winter* emphasized the public interest requirement, i.e., requiring courts to "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction,'" *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

## ANALYSIS AND DISCUSSION

Plaintiffs ask the Court to enjoin Defendants Elliott and Mako from committing certain competitive acts in violation of Plaintiffs' rights under the South Carolina Trade Secrets Act and the agreement between Plaintiffs and Defendant Elliott. The Court has carefully considered the evidence, the arguments of counsel, and the record in this case. Accordingly, the Court finds that Plaintiffs have clearly shown that they are likely to succeed on the merits of their breach of contract and trade secrets misappropriation claims against Defendant Elliott, and have additionally shown that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in their favor, and that an injunction is in the public interest. Therefore this Court will issue injunctive relief in favor of Plaintiffs and against Defendant Elliott.

On the other hand, on the record before this Court, Plaintiffs have failed to show Defendant Mako breached a contract or misappropriated Plaintiffs' trade secrets in a manner sufficient to

warrant granting injunctive relief. Plaintiffs' Amended Complaint raises several claims concerning the activity of Defendant Mako specifically to include violations of the South Carolina Trade Secrets Act, Unfair Trade Practices Act, Tortious Interference with Contractual Relations, and Intentional Interference with Prospective Contractual Relations. However, Plaintiffs have not, even in their renewed motion, moved for or established entitlement to injunctive relief based on these claims with the exception of the trade secrets act claim, most significantly addressed toward Defendant Elliott's conduct. First, however, Mako is admittedly a non-party to the Agreement at issue, second, Plaintiffs have not submitted sufficient evidence that Defendant Mako actually acquired and misappropriated Plaintiffs' trade secrets. Accordingly, this Court will only grant certain aspects of the requested relief based on the evidence concerning Defendant Elliott, and will address the injunctive relief factors below.

It is clear, however, that Defendant Mako takes the allegations presented in this lawsuit seriously, and has testified, that Mako has already suspended Defendant Elliott from all activities on behalf of the company as a result of the allegations presented in the Amended Complaint. (ECF No. 61 at 5.) Thus, Plaintiffs are not entirely without a remedy and of course may renew its motion against Defendant Mako should new evidence present itself in support of their claims for injunctive relief against Defendant Mako specifically.

1. **<u>Substantial Likelihood that Plaintiffs will Succeed on the Merits</u>**

At the outset, the Court notes that Plaintiffs only address the likelihood of success on the merits as to two of their claims—causes of action for trade secret misappropriation and for breach of contract. Plaintiffs, however, must make a clear showing that they will likely succeed on the merits of each of the claims for which it seeks injunctive relief. *See Saint-Gobain Corp. v. Miller*,

C/A No. 2:14-cv-1662-MBS, *3, 2014 WL 6686787 (D.S.C. Nov. 25, 2014). Accordingly, this Court will address the requested relief sought in light of the arguments made on breach of contract and trade secret misappropriation claims only.

### A.  **Claim for Breach of Contract**

Plaintiffs maintain they are likely to succeed on the merits of their claim for breach of contract because Plaintiffs and Defendant Elliott entered into a binding contract governed by South Carolina law that was breached when Defendant Elliott disclosed Plaintiffs' trade secrets and confidential information, solicited Plaintiffs' customers and employees to Mako, and competed against Plaintiffs in the areas of medical supply and testing. (ECF No. 55-1 at 12-13.) Plaintiffs contend that they have suffered monetary damages, in addition to damage to goodwill and client relationships. (ECF No. 55-1 at 13.)

The contract at issue here is a "Non-Disclosure, Non-Solicitation and Non-Compete Agreement" ("Agreement") signed in December 2013 between Defendant Elliott (the "Employee") and "Vessel Medical, Inc., together with any and all affiliated or related entities, subsidiaries, or divisions thereof (collectively referred to herein as "Vessel" or the "Company").[2] (ECF No. 55-3 at 2.) At issue are three primary restrictive covenants: 1) covenant not to disclose trade secrets and confidential information; 2) non-solicitation of customers, vendors, and employees; and 3) covenant not to compete. A restrictive covenant in an employment agreement is valid under South Carolina law if (1) "necessary for the protection of the legitimate interest of the employer;" (2) "reasonably

---

[2] Accordingly, Defendant Elliott's argument that he was not subject to the Agreement because he was formally employed by Premier only is simply unavailing where the Agreement is clear to include both Premier and Vessel, related companies, as parties to the Agreement collectively referred to as "Vessel." (ECF No. 12 at 2.)

limited in its operation with respect to time and place;" (3) "not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood;" (4) "reasonable from the standpoint of public policy;" and (5) "supported by valuable consideration." *See Rental Unif. Serv. v. Dudley*, 278 S.C. 674, 301 S.E.2d 142, 143 (S.C.1983).

### 1. Non-Disclosure Covenant

Per the non-disclosure covenant, Defendant Elliott expressly acknowledged that Vessel has information which is confidential and which constitutes trade secrets under South Carolina law, essential to Vessel's unique business. (ECF No. 55-3 at 2.) Defendant Elliott further acknowledged and recognized that certain lists of customers, suppliers, vendors, as well as Vessel's financial data, pricing and supply policies, and strategic and marketing plans, are special assets and trade secrets of Vessel. (ECF No. 55-3 at 2-3.) The Agreement also addresses Vessel's confidential and proprietary information which does not necessarily rise to the level of a trade secret. (ECF No. 55-3 at 3.) Pursuant to the Agreement, Defendant Elliott agreed that he would not use or disclose Vessel trade secrets without the express consent of the company. (ECF No. 55-3 at 3.) Further, Defendant Elliott "further covenant[ed] and agree[d] that during Employee's employment with the Company and for a period of eighteen (18) months after the termination thereof for any reason..., Employee shall not use or disclose any Confidential Information, except as an Employee of Vessel with the express written consent of the Company." (ECF No. 55-3 at 3.)

Defendant Elliott maintains the Agreement's non-disclosure provisions concerning trade secrets and confidential information is too broad for enforcement and that it is therefore unlikely that Plaintiffs can succeed on the merits. (ECF No. 12 at 17-18.) This Court does not agree. The Agreement is carefully aimed at protecting Vessel's legitimate business interests and information,

is reasonably limited in time, and does purport to preclude an employee from finding gainful employment in his chosen field. *See Milliken & Co. v. Morin*, 399 S.C. 23, 38-39, 731 S.E.2d 288 (S.C. 2012). South Carolina courts have recognized an employer's legitimate interest in protecting confidential information from disclosure and use through reasonably tailored confidentiality clauses. *Id.* at 39. Based on the foregoing, the Court concludes that at this juncture of the proceedings, the non-disclosure agreement is not facially unenforceable.

2. <u>Non-Solicitation of Customers, Vendors, and Employees</u>

Defendant Elliott also agreed that for a period of eighteen months after the termination of employment, he will not "directly or indirectly, alone or in association with or on behalf of another person or entity, (i) solicit for the purpose of providing services or products in competition with Vessel's Business, (ii) accept any Business from or (iii) perform any service in Competition with Vessel for, any person or entity who was a customer of Vessel during the final twelve (12) months of Employee's employment with Vessel and with whom Employee had information, involvement or contact, directly or indirectly during such time." (ECF No. 55-3 at 3.) Similarly, the provisions also preclude such contact with "Prospective Customers" of Vessel in recognizing that Vessel's list of current and prospective customers is a valuable property interest developed at great expense. (ECF No. 55-3 at 3.) Additionally, for a period of 18 months after the termination of the employee, the employee is precluded from directly or indirectly, soliciting a supplier, distributor or vendor of Vessel (during the last 12 months of the employee's employment), for the purpose of obtaining products or services in competition with Vessel. (ECF No. 55-3 at 3.) Finally, the Agreement also directs that employees avoid, either directly or indirectly, alone or in association, soliciting or encouraging any employee of Vessel to leave Vessel's employment to work for a competing

business. (ECF No. 55-3 at 4.)

Defendant Elliott argues that the non-solicitation provision of the Agreement is overbroad, acting as an "unrestricted non-compete," and unreasonably restricts Elliott from contacting former and prospective customers, as opposed to just Plaintiffs' existing customers. (ECF No. 12 at 13-16.) First, South Carolina case law recognizes that "[p]rohibitions against contacting existing customers can be a valid substitute for a geographic limitation." *Wolf v. Colonial Life & Accident Ins. Co.*, 309 S.C. 100, 420 S.E.2d 217, 222 (S.C.Ct.App.1992). Here, Elliott is restricted from soliciting customers with whom he had contact during his last 12 months of employment and such covenants have withstood overbreadth challenges. *See, e.g., ScanSource, Inc. v. Thurston Group, LLC*, C/A No. DKC 11–0380, 2011 WL 3608227, at *4–5 (D.Md. Aug.15, 2011) (unpublished) (applying South Carolina law and concluding that a covenant not to compete lacking a geographic limitation was enforceable because it was limited to employee's customers). Additionally, covenants preventing the solicitation of former customers are enforceable under the South Carolina law. *See, e.g., Baugh v. Columbia Heart Clinic, P.A.*, 402 S.C. 1, 12, 738 S.E.2d 480, 486 (S.C. Ct. App. 2013) ("[A]n otherwise reasonable limitation on the solicitation of former clients can substitute for a territory restriction.") Finally, that the non-solicitation provision also extends to prospective clients of Plaintiffs would not render it void automatically, given that the restrictions are limited in scope and duration. *See Hagemeyer North America Inc., v. Thompson*, C/A No. 2:05-cv-3425, 2006 WL 516733, *5 (D.S.C. Mar. 1, 2006) (finding reasonable a non-solicitation agreement limited to the employer's customers from a certain period of time who were served by the defendant, with whom he had contact, or whose names or addresses the employer provided to the defendant in furtherance of the employer's business); *see also Ciena Corp. v. Jarrard*, 203 F.3d 312, 322 (4th Cir.

2000) (affirming an injunction enforcing a covenant barring solicitation of prospective clients under Maryland law). Based on the foregoing, the Court concludes that at this juncture of the proceedings, the non-compete agreement is not facially unenforceable.

### 3.     Covenant Not to Compete

Finally, the Agreement contains a covenant not to compete provision which, for a period of 18 months after the termination of the employee, prohibits the employee from engaging in activities that are competitive with Vessel's business in a capacity for which he worked with Plaintiffs during the last 12 months of employment with Vessel. (ECF No. 55-3 at 4.) The Agreement imposes a geographical restriction based on the territory wherein Defendant Elliott was working or assigned at the time of his termination, or anywhere within a 20 mile radius of the location at which the employee was working for the company at the time of termination. (ECF No. 55-3 at 4.)

Covenants not to compete are strictly construed against the employer and must be narrowly drawn to protect the employer's legitimate interests. *Faces Boutique, Ltd. v. Gibbs*, 318 S.C. 39, 42, 455 S.E.2d 707 (S.C. Ct. App. 1995). "An agreement's enforceability depends on whether it is necessary for the protection of the legitimate interest of the employer, is reasonably limited in its operation with respect to time and place, is not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood, is reasonable from the standpoint of sound public policy, and is supported by a valuable consideration." *Rental Uniform Serv. of Florence, Inc. v. Dudley*, 278 S.C. 674, 675-676, 301 S.E.2d 142, 143 (1983).

The Court has reviewed the Agreement in its entirely and concludes that the non-compete provision is not facially unenforceable. Plaintiff argues that the non-compete provision must fail because it does not limit the covenant to a particular area and thus operates as an overbroad

"nationwide non-complete." (ECF No. 12 at 2.) Under South Carolina law, "[t]o be considered reasonable, a territorial restriction must not cover an area any broader than is necessary to protect the employer's legitimate interest." *Stringer v. Herron*, 309 S.C. 529, 532, 424 S.E.2d 547 (S.C. Ct. App. 1992); *see also Rental Uniform Serv. v. Dudley*, 278 S.C. 674, 676, 301 S.E.2d 142 (1983)(citation omitted) ("A geographic restriction is generally reasonable if the area covered by the restraint is limited to the territory in which the employee was able, during the term of his employment, to establish contact with his employer's customers."). The Agreement at issue here is not one which lacks a geographic limitation all together. The geographic scope of the non-compete is limited to the areas where Defendant Elliott himself was working on behalf of the Plaintiffs and within a 20 mile radius of the location where he worked on behalf of Plaintiffs. *Baugh v. Columbia Heart Clinic, P.A.*, 402 S.C. 1, 18-20, 738 S.E.2d 480 (S.C. Ct. App. 2013)(finding a 20-mile territory restriction reasonable).

In sum and for the purposes of this preliminary injunction inquiry, the Court find that the covenants are necessary for the protection of Plaintiffs' legitimate interests in their trade secrets and client relationships as recognized in the Agreement itself and by South Carolina law. The covenants have reasonable geographic and temporal scope limitations and are supported by public policy. The covenants are also reasonable in that they still allow Defendants Elliott ample opportunity to work within his industry. Finally, the covenants are supported by consideration based on the at-will employment relationship between Defendant Elliott and Plaintiffs. *See Riedman Corp. v. Jarosh*, 290 S.C. 252, 253, 349 S.E.2d 404 (1986). Accordingly, the non-compete agreements are not facially unenforceable.

To show a likelihood of success on the merits, Plaintiffs must establish the existence of a

valid and enforceable contract, breach of the contract, and damages caused by that breach. *See Saint-Gobain Corp. v. Miller*, C/A No. 2:14-cv-1662, 2014 WL 6686787, *6 (D.S.C. Nov. 25, 2014)(citing *Consignment Sales, LLC v. Tucker Oil Co.*, 391 S.C. 266, 705 S.E.2d 73, 76 (S.C.Ct.App.2010)). Based on the evidence presented, Plaintiffs have done so here. Plaintiffs and Defendant Elliott entered into a binding contract supported by sufficient consideration when Defendant Elliott began his employment with Vessel and Premier, an affiliated and related entity. Based on the testimony presented and the evidence in the record, Defendant Elliott admittedly violated the terms of the Agreement by contacting Plaintiffs' customers after his resignation for the benefit of Mako and in direct competition of Plaintiffs. (ECF No. 12-1 at 6.) Plaintiffs have further testified as to the damages suffered as a result of loss of client relationships and goodwill—accordingly, success on the merits of the breach of contract claim is likely.

    B.  **<u>Trade Secret Misappropriation Claim</u>**

Plaintiffs also maintain they are likely to succeed on the merits of their claims for trade secret misappropriation. (ECF No. 5-1 at 16.) To succeed on such a claim, a plaintiff must show that it has a trade secret and that the defendant misappropriated the trade secret. S.C.Code Ann. § 39–8–30 (C); *see also Lowndes Products, Inc. v. Brower*, 259 S.C. 322, 327, 191 S.E.2d 761, 764 (1972). Under the South Carolina Trade Secrets Act ("SCTSA"), information may be a trade secret only if it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." S.C.Code Ann. § 39–8–20(5)(a). A plaintiff must adequately identify and describe the subject matter of its alleged trade secrets in sufficient detail to establish

each element of a trade secret and to enable the jury to differentiate that which is claimed as a trade secret from "matters of general knowledge in the trade." *Trandes Corp. v. Guy F. Atkinson, Co.*, 996 F.2d 655, 661–62 (4th Cir.1993). A "confidential relationship is the keystone of a trade secret action" and there must a be an express understanding between an employer and employee as to the confidential nature of the information or circumstances so that the "employee is aware of the confidence placed in him by the employer." *Future Plastics, Inc. v. Ware Shoals Plastics, Inc.*, 340 F.Supp. 1376, 1384 (D.S.C.1972).

Here, Plaintiffs argue that, during the scope of his employment with Plaintiffs, Defendant Elliott had access to Plaintiffs' information, specialized processes and procedures, methodologies, research, and marketing materials which Plaintiffs classify as trade secret information. (ECF No. 55-1 at 17-18.) Plaintiffs allege that Defendant Elliott acquired access to Plaintiffs' trade secret information under circumstances expressly requiring that he maintain their secrecy and that he subsequently disregarded his obligations to Plaintiffs by directly soliciting at least three client accounts for Mako's benefit by using information from Plaintiffs' customer information compilations. (ECF No. 55-1 at 18-19.) Plaintiffs maintain, by way of the testimony of Plaintiffs' CEO, that Defendant Elliott also used and relied upon Plaintiffs' trade secret processes to establish Mako as a competing business. (ECF No. 55-1 at 20-21.)

Defendant Elliott does not directly address Plaintiffs' likelihood of success on the trade secrets claim. He generally contends, however, that most of the information claimed by Plaintiffs as trade secrets does not belong to Plaintiffs or should not be classified as such. (ECF No. 12 at 9.) Neither argument is availing in light of the record evidence in this case. The Agreement at issue in this case sets forth a detailed definition of "trade secrets," i.e., formulas, patterns, compilations,

methods, techniques, procedures, etc., as the term is used in accordance with the SCTSA. As Plaintiffs allege and attest, Defendant Elliott had access to a significant amount of confidential information concerning Plaintiffs' unique processes and methodologies which are not generally available to the public, and are protected by the company. (ECF No. 55-1 at 17.)

Plaintiffs have presented the testimony of Kevin Murdock, the CEO and sole shareholder of Vessel and Premier, which emphasizes the scope of Elliott's access to Vessel and Premier's information as part of his employment. (ECF No. 55-2.) Mr. Murdock testifies that Defendant Elliott began to solicit Vessel and Premier clients and prospective clients through the use of Vessel and Premier customer lists and information which he acquired as a result of his position with Plaintiffs. (ECF No. 55-2 at 6.) Mr. Murdock also testifies that he learned that Defendant Elliott diverted account referrals for several drug rehabilitation centers from Plaintiffs to Mako and also reproduced several marketing materials for Mako while still employed by Plaintiffs, conduct which constitutes misappropriation as its defined under the SCTSA, S.C. Code Ann. § 39-8-20(2). (ECF No. 55-2 at 8.) Plaintiffs also submitted the affidavit of employee Mr. Norman Crawford who reviewed the business records of Vessel and Premier, including GPS tracking history of Defendant Elliott's company car and emails recovered from Defendant Elliott's work account. (ECF No.39-5.) Mr. Crawford testifies that his review of certain recovered emails reveals that in the months leading up to his resignation, Defendant Elliott sent proprietary information regarding Plaintiffs' customers and business to his personal email account. (ECF No. 39-5.) The Court has reviewed those emails (ECF No. 39-2), along with the GPS tracking history report (ECF No. 39-1) and the other record evidence, including Defendant Elliott's own testimony. The evidence would show that Defendant Elliott had several proprietary files in his personal possession and has retained them without permission, which

is also a violation of the "Return of Documents" provision of the Agreement. (ECF No. 55-3 at 4.) Because Defendant Elliott acquired access to Plaintiffs' trade secrets by way of his position with Plaintiffs giving rise to a duty to maintain secrecy as evidenced by the Agreement signed, Plaintiffs have shown a likelihood of success on the merits of their trade secrets claim against Defendant Elliott.

### 2. Irreparable Harm in the Absence of Injunctive Relief

Plaintiffs argue that they will suffer irreparable harm if this Court does not enjoin Defendants from disclosing or using its misappropriated trade secrets and confidential information. (ECF No. 55-1 at 21.) Specifically, Plaintiffs maintain that Defendant Elliott will continue using "Plaintiffs' trade secret customer compilations" to disparage Plaintiffs, cause clients to move their accounts to Mako, and to permanently destroy Plaintiffs' business. (ECF No. 55-1 at 21-22.) Defendant Elliott contends that Plaintiffs have failed to allege any specific facts demonstrating that irreparable harm is imminent and actual. (ECF No. 12 at 7.)

Having reviewed the motion and the responses filed, the Court finds Plaintiffs have put forth sufficient evidence supporting the conclusion Plaintiffs will suffer irreparable injury if injunctive relief is not granted. First, there is strong evidence in the record that Defendant Elliott took documents belonging to Plaintiff after he knew he would be going to work with Defendant Mako, and therefore evidence that Defendant Mako has already misappropriated Plaintiffs' trade secrets. This evidence is more than a mere remote and speculative possibility of harm. (ECF No. 12 at 7.) Additionally, the testimony in the record reflects that Plaintiffs have already lost certain of its client relationships in conjunction with Defendant Elliott's conduct and also experienced damage to business goodwill. (ECF No. 55-1 at 21.)

Courts have recognized that the loss of permanent relationships with customers constitutes irreparable harm to an employer. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir.1985) ("The customers cannot be 'unsolicited'"); *Peek v. Spartanburg Reg'l Healthcare Sys.*, 367 S.C. 450, 456, 626 S.E.2d 34, 37 & n. 2 (S.C.Ct.App.2005). Similarly, the "loss of even a single trade secret is irreparable harm, and the threatened disclosure of a trade secret supports the imposition of injunctive relief." *See Nucor Corp. v. Bell*, C/A No. 2:06-cv-02972, 2008 WL 9894350 (D.S.C. Mar. 14, 2008). Further, the loss of a trade secret is difficult to measure in monetary damages because once the secret is lost, it is indeed lost forever. *Id.* at 20. In his affidavit, Defendant Elliott does not seriously dispute Plaintiffs' contentions, and instead suggests that he cannot imagine any trade secrets owned by Premier and otherwise offers a business explanation for some of the conduct alleged to have occurred. (ECF No. 12-1 at 7.) He also admits that after his relationship ended with Premier, he introduced a client of Premier to Mako, the sort of conduct prohibited by the Agreement. (ECF No. 12-1 at 7.) Accordingly, on the record before this Court, Plaintiffs have satisfied their burden of showing immediate and irreparable harm.

3.  **Balance of Equities**

This Court must also consider whether the balance of the equities tips in favor of Plaintiffs. Plaintiffs argue that Defendants will not be harmed by the issuance of a preliminary injunction because an injunction would only require Defendants to abide by the obligations established by the agreement Elliott signed covenanting that he would not solicit Plaintiffs' customers or misuse Plaintiffs' trade secrets. (ECF No.55-1 at 23.) Defendant Elliott does not present any arguments to refute this position.

The Court agrees that the balance of equities factor favors Plaintiffs. The harm, i.e., the loss

of customer relationships, good will, and business reputation, caused if limited injunctive relief is not granted, outweighs any harm experienced by Defendant Elliott due to the enforcement of the agreement he voluntarily signed when he began his employment with Plaintiffs. Accordingly, the Court concludes that the balance of the equities weighs in favor of granting injunctive relief to Plaintiffs and against Defendant Elliott. *See Industrial Packaging Supplies, Inc. v. Martin*, C/A No. 6:12-cv-713-HMH, 2012 WL 1067650 (D.S.C. Mar. 29, 2012).

### 4. <u>Injunctive Relief in the Public Interest</u>

Finally, Plaintiffs argue that the last factor meriting injunctive relief is also satisfied because the public interest is in favor of enforcing laws that give protection to trade secrets, preventing unfair competition in the marketplace, and recognizing restrictive covenants and employment agreements. (ECF No. 5-1 at 24.) Defendant Elliott does not present any arguments on this factor either.

Before granting preliminary injunctive relief, the Court must consider whether granting or denying the injunction is in the public interest and give particular consideration to the public consequences of granting a preliminary injunction. *Occupy Columbia v. Haley*, 866 F. Supp. 2d 545, 552 (D.S.C. Dec. 16, 2011). Here the public interest weighs slightly in favor of issuing injunctive relief as the public has a strong interest in ensuring contracts are enforced and trade secrets are protected. *Industrial Packaging Supplies, Inc. v. Martin*, C/A No. 6:12-cv- 713-HMH, 2012 WL 1067650 (D.S.C. Mar. 29, 2012); *Uhlig, LLC v. Shirley*, 6: 08-cv-1208-HFF, 2008 WL 3057290, *8 (D.S.C. Aug. 5, 2008)  Because the Agreement is deemed valid at this initial juncture, the Court determines that a preliminary injunction is in the public's interest.

## CONCLUSION

For the reasons stated above, this Court concludes that a preliminary injunction as requested

by Plaintiffs should be GRANTED IN PART and DENIED IN PART. (ECF No. 55.)

IT IS FURTHER ORDERED that Defendant Elliott, directly or indirectly, alone or in association with or on behalf of any other person, is hereby enjoined from:

(A) Possessing, using, disclosing, or transmitting Plaintiffs' trade secrets and confidential information as specifically identified herein, including, but not limited to: Plaintiffs' supply, distribution, testing, recruiting, sales, and marketing formulas, patterns, compilations, programs, devices, methods, techniques, products, systems, processes, designs, prototypes, procedures, and code; information related to Plaintiffs' customers and vendors, including purchasing habits, contact persons, shipping status, payment terms and habits, product types and volumes purchased, supplied, or distributed, the identity and contact information of decision-makers, business needs, and commission structures; specialized marketing materials, programs, tactics, presentations, brochures, and documents; and providing that all original documents, records, materials or devices containing or reflecting such information, and all copies thereof, be immediately returned to Plaintiffs; and

(B) Soliciting, accepting, selling, offering for sale, or assisting in the sale of any product or service which competes with any product, service, or business of Plaintiffs to any customer or entity to whom Elliott sold products for or on behalf of Plaintiffs, or any prospective customer of Plaintiffs with whom Elliott had information, involvement, or contact, during the last twelve (12) months of his employment with Plaintiffs, and

(C) Engaging in activities that are competitive with the business of Vessel and/or Premier in any capacity identical with or corresponding to his capacity as Director of Strategic Business Development for Plaintiffs anywhere within the territory where Elliott worked, was assigned responsibility, or within twenty (20) miles from the physical location where Elliott worked on behalf

of Plaintiffs.

(D) Soliciting or encouraging any employees of Plaintiffs to leave the employment of Vessel and work in competition with Plaintiffs.

(E) Elliott shall identify to counsel for Plaintiff, no later than five (5) business days from the date of the Court's Order, the full source, nature and substance of any Vessel and/or Premier confidential information or trade secrets, as identified herein, that Defendants may have used at any time subsequent to or related to Elliott's employment with Mako, or that Elliott may have disclosed to any third party during that timeframe and, where applicable, the names, dates and contact information for the individual or entity to whom said disclosure was made; and each and every customer or prospective customer of Plaintiffs whom Elliott has solicited for their own benefit, directly or indirectly, and

(F) Elliott shall refrain from the destruction, alteration, transmittal or movement of any documents, in whatever form, that may contain or reflect Plaintiffs' confidential information or trade secrets so that said documents may be gathered and reviewed by counsel for Plaintiffs and this Court.

It is hereby ordered that this injunction shall remain in effect during the pendency of this action, and until further order of this Court.

IT IS FURTHER ORDERED that Plaintiffs must post bond in the amount of five thousand ($5,000.00) dollars and must be posted with the Clerk of Court for the District of South Carolina immediately and in accordance with the mandatory security provisions of Federal Rule of Civil Procedure 65(c). *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir.1999). Although the parties failed to present any arguments on the appropriate amount of security, within its discretion, the Court finds the amount of $5,000.00 to be proper to pay the costs

and damages sustained by Defendant Elliott should he be later found to have been wrongfully enjoined.  If necessary, Defendant Elliott can seek an increase of the amount of bond on a proper showing.

    IT IS SO ORDERED.

                                                                     <u>/s/Mary G. Lewis</u>
                                                                     United States District Judge

September 15, 2015
Columbia, South Carolina